IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BUMPER MAN, INC., | § | |
| Plaintiff, | § | |
| v. | § | 3:15-CV-02434-BF |
| ROY SMIT, | § | |
| Defendant. | § | |
| | § | |

**Attorneys and Law Firms**

Gary E. Smith, Graham, Bright & Smith, Dallas, TX, for Plaintiff.
C. Kyle Pugh, C. Kyle Pugh, P.C., Dallas, TX, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAUL D. STICKNEY, United States Magistrate Judge.

This is a consent case before the United States Magistrate Judge. Plaintiff, Bumper Man Inc. ("Bumper Man") brought this action against Defendant, Roy Smit. Plaintiff alleges the following claims against Defendant: (1) Breach of Franchise Agreement and Agreement & Assignment of Franchise; (2) Misappropriation of Trade Secrets; (3) False Designation of Origin under 15 U.S.C. § 1125(a) of the Lanham Act; and (4) Common Law Unfair Competition. After a bench trial conducted on August 1, 2016, in the above captioned matter, and review of the pleadings filed by the parties, the Court makes the following Findings of Fact, Conclusions of Law and decision.

### FINDINGS OF FACT

Plaintiff, Bumper Man Inc. ("Bumper Man"), is a corporation with its principal place of business in the State of Texas. Defendant, Roy Smit ("Smit"), is a citizen of the State of Florida. Jeff Bramblett, the President of Bumper Man, founded the company in 1993. His wife, Tanya Bramblett, serves as the Vice President. On October 6, 2009, Bumper Man and Smit entered into

a Franchise Agreement. Smit owned and operated a Bumper Man franchise until July 29, 2010.

Paragraph 7.6 of the Franchise Agreement between the parties states the following:

> 7.6     Non-competition: Duration: During the term of this Agreement, and for two (2) years from either: (a) termination, expiration, or non-renewal of this Agreement for any reason; or (b) cessation of work as a Bumper Man Technician as defined in Paragraph 10.1.1(c); whichever is later: You will not directly; nor as a beneficial owner, investor, partner, director, officer employee, independent contractor, representative, or agent; nor through a family member or other agent; control, own, provide consulting services for, benefit from or engage in; any business offering bumper repair services or any other services and products then being offered by Bumper Man franchisee, either as an independent business, as a franchisee or an as franchisor.

On July 29, 2010, Bumper Man and Smit entered into a Termination Agreement and Mutual Release. Paragraph 2 of the Addendum to the Termination Agreement and Mutual Release states as follows:

> 2. You cannot compete with Bumper Man, Inc. or any Bumper Man franchisee, directly or indirectly. (See paragraph 7.6 of your franchise agreement.)

sThe Termination Agreement and Mutual Release, which incorporated the Franchise The Termination Agreement and Mutual Release, which incorporated the Franchise Agreement, expressly stated that the duration of the non-compete was limited to two years from the date of termination. Smit and Tanya Bramblett both signed the Termination Agreement and Mutual Release. The court admitted both agreements into evidence. The covenant not to compete expired on July 29, 2012, by express agreement of the parties. Smit did not repair bumpers during the two-year period imposed by the covenant not to compete.

On August 15, 2013, one year after the expiration of the non-compete, Smit formed Doctor Bumper Inc. ("Doctor Bumper"), a Florida corporation. Smit in his operation of Doctor Bumper began to repair bumpers. Plaintiff did not file any claims against Doctor Bumper. Smit uses common bumper repair techniques known generally to bumper repair technicians and body

shop technicians. Smit removes the bumper to complete the repair, as is commonly done by bumper repair technicians.

On July 22, 2015, Bumper Man filed this lawsuit alleging: (1) Breach of Franchise Agreement and Agreement & Assignment of Franchise; (2) Misappropriation of Trade Secrets; (3) False Designation of Origin under the Lanham Act; and (4) Common Law Unfair Competition. Bumper Man does not hold a trademark, copyright, or patent on any techniques used by Bumper Man. Bumper Man holds only one patent for its tool the "hook bar." Bumper Man's only protection of trade secrets are in the form of the Franchise Agreement.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 15 U.S.C. § 1125. Venue is proper is in Northern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) and paragraph 13.2 of the Franchise Agreement. Bumper Man has standing to sue Smit and his case was ripe for review.

## CONCLUSIONS OF LAW

### I. Plaintiff's Claim of Breach of Non Compete within Franchise Agreement

To prove a breach of a covenant not to compete, Plaintiff must show a valid and enforceable agreement.[1] "[A] covenant not to compete is enforceable to the extent (1) it is ancillary to an otherwise enforceable agreement and (2) contains reasonable limitations as to the time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1353 (N.D. Tex.), aff'd sub nom. *Ruscitto v. Merrill, Lynch, Pierce*, 948 F.2d 1286 (5th Cir. 1991) (citing Tex. Bus. & Com. Code Ann. § 15.50); *see also A&A Glob. Indus., Inc. v. Wolfe*, No. 3:01-CV-1515-D,

2001 WL 1388020, at *4 (N.D. Tex. Nov. 6, 2001) (Fitzwater, J.) (applying § 15.50 in awarding preliminary injunctive relief for covenant not to compete). Bumper Man sued Smit for violating the non-compete (Breach of Franchise Agreement and Agreement & Assignment of Franchise) on July 22, 2015, three years after the non-compete had expired. The non-compete clause contained within the Franchise Agreement expired more than one year prior to Smit beginning to repair bumpers again, therefore the non-compete issue is moot. *Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) ("[T]he parties entered into a contract providing for a noncompetitive period following cessation of employment and such period is now past which causes the issue to become moot"). There is insufficient evidence in the record to show that Smit competed with Bumper Man during the time the non-compete clause applied. Bumper Man did not introduce testimony or sufficient evidence showing that Smit violated the non-compete clause. Smit performed pursuant to the contract and did not compete with Bumper Man within the agreed upon time frame.

The evidence further shows Smit did not unfairly compete by using Bumper Man tools. Smit only uses tools readily available at mass-retail home improvement stores or tools that he has constructed himself. Smit does not possess nor use the Bumper Mans patented "hook bar." The tools used by Smit are substantially different to the tools he was given by Bumper Man. Although the parties presented conflicting testimony, this Court finds Smit did not use Bumper Man tools in his services at Doctor Bumper. Smit did not violate the covenant not to compete. Accordingly, the Court finds that the evidence does not show, or support an inference, that Smit violated the terms of the Franchise Agreement or the covenant not to compete.

## II. Misappropriation of Trade Secrets

---

[1] *See* Tex. Bus. & Com. Code Ann. §§ 15.50, 15.51(a).

To prove a claim of misappropriation of a trade secret, the plaintiff must: (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3) show that the defendant used the trade secret without authorization from the plaintiff. *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 149–50 (5th Cir. 2004); *Spear Mktg., Inc. v. BancorpSouth Bank,* 791 F.3d 586, 600 (5th Cir. 2015); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3)-(6) (defining "misappropriation" and "trade secret"). The six criteria the court must examine to determine whether a trade secret exists are:

> (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Gen. Universal,* 379 F.3d at 150; *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *18 (N.D. Tex. Aug. 16, 2016).

First, Bumper Man did not meet its burden to show that a trade secret or violation of trade secret exists. Smit presented testimony that he did not employ the same techniques and tools to repair bumpers as Bumper Man, rather Smit used techniques commonly used to repair bumpers by automobile body repair shops. Smit testified that many of the techniques he uses are available on You Tube or on the internet. In the Addendum to Termination Agreement and Mutual Release, Bumper Man and Smit contracted that he could not use any trade secrets, "[y]ou cannot use any trade secrets; i.e. repair techniques or confidential information that we have provided to you, or that you learned as a franchisee in the Bumper Man franchise system. (See paragraphs 6.3.5, 6.3.6 and 6.3.7 of your franchise agreement)." The Franchise Agreement provides that

material that "Confidential Information" and "Trade Secrets" includes: "[a]ll information and knowledge about the Franchise System and its services, products, designs, devices and tools, operations, . . . procedures, and techniques which are *not in the public domain or generally known* in the automotive industry . . . " (emphasis added).

The designation by Bumper Man that the tool and techniques used by franchisees and employees is not sufficient under Texas law to be deemed a trade secret. The only measure taken to safeguard the secrecy of information by Bumper Man was the Franchise Agreement. Further, Bumper Man holds only one patent in its range of tools for the "hook bar" tool. Bumper Man failed to present sufficient direct evidence that a trade secret existed.

Bumper Man did not demonstrate that the tools and techniques used by Smit were not in the public domain or generally known in the automotive industry. *EEMSO, Inc. v. Compex Techs., Inc.*, No. 305-CV-0897-P, 2006 WL 2583174, at *6 (N.D. Tex. Aug. 31, 2006) ("A trade secret can neither be generally known by others in the same business nor readily ascertainable by an independent investigation"). Bumper Man did not require customers to sign non-disclosure agreements or confidentiality agreements before completion of the repair services. Bumper Man has never engaged in this practice. Bumper Man has not taken measures to keep these matters a trade secret. Smit presented testimony showing that these techniques could not just be found online, but were demonstrated by Bumper Man employees in front of other customers, car dealerships, and body shops. *Lawfinders Associates, Inc. v. Legal Research Ctr., Inc.*, 65 F. Supp. 2d 414, 419 (N.D. Tex. 1998), aff'd, 193 F.3d 517 (5th Cir. 1999) ("courts have refused to give material or a procedure trade secret protection when that which is sought to be protected has been publicly disclosed. This is so because information generally known and readily available is not protectable.").

Smit only received training from Bumper Man for ten days. Any further knowledge he gained in his employment was through his own education and resources. Bumper Man has not proven that Smit used the trade secrets without authorization upon his termination with Bumper Man. There is not sufficient evidence that Smit breached a confidential relationship or discovered these tools and techniques by improper means. Although Smit used tools that were similar to Bumper Man tools, they were purchased online or constructed by hand. Prior to his termination with Bumper Man Smit returned the tools given to him by Bumper Man. Smit only began to construct his own tools after the expiration of his non-compete with Bumper Man. Smit constructed tools from plastics that he obtained from home improvement stores in Florida and Columbia. As stated previously, Smit does not use the patented "hook bar." The Court finds that Bumper Man's techniques, along with its tools, are available in the public domain. The techniques themselves are generally known in the automotive industry and are accessible by any individual. Therefore, Plaintiff's claim for misappropriation of a trade secret fails.

### III. False Designation of Origin under the Lanham Act

To prove a claim of false designation of origin under the Lanham Act[2], Plaintiff must show that: (1) a false or misleading statement of fact about a product; (2) that the statement

---

[2] The Lanham Act provides a civil action for:

    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . . 15 U.S.C.A. § 1125(a).

deceived or had the capacity to deceive a substantial segment of customers; (3) the deception was material, meaning it was likely to influence purchasing decisions; (4) the product was in interstate commerce; and (5) the plaintiff was injured by the statement. *Grand Time Corp. v. Watch Factory Corp.*, No. 3:08-CV-1770-K, 2011 WL 2412960, at *5 (N.D. Tex. June 10, 2011); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). "A false designation of origin case is often one of 'passing off' or 'reverse passing off,' meaning the defendant had either sold its product under the name of a competitor or had sold a competitor's product under the defendant's trade name and dress." *Grand Time Corp.*, 2011 WL 2412960, at *5 (quoting *Hearthrand Beef Inc. v. Lobel's of New York, LLC*, No. V–08–62, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009)).

Bumper Man argues that Smit's use of confidential information and other trade secrets in operating Doctor Bumper constitutes false designation of origin under the Lanham Act. Bumper Man alleges Smits' use of Bumper Man like trade dress in operating Doctor Bumper also constitutes false designation of origin. There is no evidence Smit ever made a false statement of fact about its product in a commercial advertisement or caused confusion among consumers, therefore Plaintiff's claims cannot succeed. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) (holding the Lanham Act requires proof of the likelihood of confusion); *see also Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) ("The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion") (citation omitted). Smit did not use confidential information or trade secrets in operating Doctor Bumper. None of Bumper Man's tools or techniques qualify for trade dress. Doctor Bumper and Bumper Man are only similar in that they

both include the word "bumper." This use is not similar enough to cause confusion.[3] Bumper

Man introduced no evidence of false statements by Smit that could deceive or had the capacity to

deceive customers in a material way. *Cf. Grand Time Corp.*, 2011 WL 2412960, at *5-6

(holding defendant made a misleading statement of fact which materially deceived or had the

capacity to deceive). The Court also finds there is no evidence of injury for Bumper Man's claim

of false designation. Further, Bumper Man presented no direct evidence to support a finding that

Smit acted intentionally, willfully, or fraudulently.

Bumper Man failed to set forth a prima facie case of false designation of origin in

violation of the Lanham Act. As such, Plaintiff's claims under the Lanham Act cannot succeed.

### IV. Common Law Unfair Competition

In Texas, for a claim of common law unfair competition a plaintiff must show "an illegal act

by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor*

*Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000); *GoForIt Entm't, LLC v.*

*DigiMedia.com L.P.*, 750 F.Supp.2d 712, 734 (N.D. Tex. 2010) (Fitzwater, J.) (plaintiff must

show "some finding of an independent substantive tort or illegal conduct" by defendants that

interfered with plaintiff's ability to conduct its business) (quoting *RTLC AG Prods. v. Treatment*

*Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App. 2006, no pet.).

The Court construes Plaintiff's claims of common law unfair competition liberally.

Bumper Man alleges that Smit by using confidential information, trade dress, and a similar name

---

[3] In determining whether a likelihood of confusion exists, courts consider the following non-exhaustive list of factors: "(1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 484-85 (5th Cir. 2004); *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 686-687 (N.D. Tex. 2015).

in opening and operating Doctor Bumper, Smit is tarnishing the valuable reputation and image associated with Bumper Man. *See* Pl.'s Comp. 7 ¶ 42 [ECF No. 1]. Bumper Man alleges that these actions caused confusion as to the source and sponsorship of the goods and services offered by Dr. Bumper and are likely to continue to do so in the future. Pl.'s Comp. 7 ¶ 43 [ECF No. 1]. Bumper Man alleges these actions constituted unfair competition. Pl.'s Comp. 7 ¶ 44 [ECF No. 1].

Bumper Man has not presented enough evidence that Smit committed any tort. There is no evidence that Smit operated a competing business during his time with Bumper Man. Smit has not committed any illegal conduct in opening Doctor Bumper. Smit opened Doctor Bumper two years after his termination with Bumper Man and after signing a mutual release. Bumper Man has also failed to present sufficient evidence that Smit used any form of unfair competition in doing so. As stated above, Smit did not misappropriate any trade secrets, violate the Lanham Act, use confidential information, or breach the covenant not to compete. Even if Bumper Man had presented direct evidence that Smit used confidential information or trade secrets, it still failed to produce evidence that Bumper Man and Doctor Bumper are similar.

As a result, Bumper Man has not proven by a preponderance of the evidence that Smit committed unfair competition. Therefore, Bumper Man's claim of common law unfair competition fails as a matter of law.

### V. Defendant's Counter Claim for Breach of Contract

Upon Bumper Man bringing suit, Smit filed a counterclaim for breach of contract. Smit alleges Bumper Man breached the contract by suing Smit beyond the two year period of the covenant not to compete. Additionally, Smit alleges this breach has caused Smit to incur damages in the form of attorney fees and costs.

The Addendum to Termination Agreement and Mutual Release executed on July 29, 2010, states the following:

If you do not honor these obligations, please remember the following:

1. Bumper Man, Inc., may enforce its rights by seeking an injunction in an appropriate court, and you will be obligated to pay all its costs and attorneys fees. (See paragraphs 14.2.4 and paragraph 14.3 of your franchise agreement.)
2. Bumper Man, Inc., will be entitled to seek money damages by demanding arbitration, which will be held in Dallas County, State of Texas.

Paragraphs 14.2.4 and 14.3 of the Franchise Agreement states:

14.2.4 Disputes excluded: In Our sole discretion, the requirements to mediate or arbitrate under this Paragraph 14.2 will not apply to disputes involving Our rights under all or part of Paragraphs 6.3, 7.6, 7.7, 11.2 or 11.5 as set out in this Agreement, for which we may seek not only injunctive relief as set out in Paragraph 14.3 below, but may also litigate the entire dispute in a court of competent jurisdiction having venue in Dallas, Texas.

14.3 Injunctive Relief: In the event of any breach or threatened breach of this Agreement by You, We will immediately be entitled to injunctive relief (including a temporary restraining order, preliminary injunction, and specific performance) without showing or proving any actual damage sustained and will not thereby by deemed to have elected its remedies. It is specifically understood and agreed that We may incur incalculable and irreparable damage from any violation of Paragraphs 6.3, 7.6, 7.7, 11.2 or 11.5, and that We have no adequate remedy at law and are entitled to injunctive relief, including specific performance, for any actual or threatened violation.

Smit initialed next to paragraphs 1 and 2 in the Addendum to Termination Agreement and Mutual Release and signed accordingly. Smit also signed the Franchise Agreement containing paragraphs 14.2.4 and 14.3. As stated previously, Bumper Man has standing to bring this lawsuit.

Smit has not presented sufficient evidence for breach of contract. Under Texas law, the elements of a breach of contract action are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4)

damages sustained by the plaintiff as a result of the breach. *Barron v. Bank of Am., N.A.*, No. 3:12-CV-3784-O BF, 2013 WL 944434, at *4 (N.D. Tex. Feb. 12, 2013), R. & R. adopted, No. 3:12-CV-3784-O, 2013 WL 950737 (N.D. Tex. Mar. 12, 2013) (citing *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). Smit presented no evidence at trial of mutual mistake, unconscionability, or fraud in the execution of the Termination Agreement and Mutual Release or the Franchise Agreement. The Court strictly construes the agreements entered into by the parties. Both agreements, signed by Smit, specifically provide Bumper Man with the ability to seek injunctive relief. Therefore, the Court denies Smit's request for attorney's fees on this claim.

### *VI. Attorney Fees*

Smit moves for $21,731.25 in attorney's fees and costs in defending this suit under Tex. Civ. Pract. & Rem. Code § 38.001(8). *See* Tex. Civ. Pract. & Rem. Code § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract"). Smit and Bumper Man provided for attorney's fees in the Termination and Mutual Release Agreement. Paragraph 6 of the Termination Agreement states:

> 6. Attorneys' Fees. If an action is commenced between the parties in connection with the enforcement of any provision of this Agreement, the prevailing party will be entitled to reasonable costs and expenses, including attorney's fees and any expenses necessarily incurred to enforce the judgment.

The Court does not find that the evidence entitles Smit to attorney's fees based on his counterclaim which failed as a matter of law. *See supra* Part V. Smit is not the prevailing party on his counterclaim. Smit is the prevailing party in his defense of Bumper Man's complaint. The Court looks only to the language of the contract. "Where a contract does not define

'prevailing party', we are to 'presume the parties intended the terms ordinary meaning.'" *Intercontiental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009) ("Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's, and they have done so here").[4]  Parties to a contract may recover attorney's fees if they arrange for such recovery as a contractual term. *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *17 (Tex. App. May 20, 2010) (citing *Alma Group, L.L.C. v. Palmer*, 143 S.W.3d 840, 845 (Tex. App.-Corpus Christi 2004, pet. denied).

In giving the terms of the contract their ordinary meaning, the Termination Agreement specifically provides attorney's fees to "the prevailing party."  As set forth in this opinion, Smit is the prevailing party having successfully defended against all of Bumper Man's claims.  At the close of the evidence the Court granted Smit's motion for directed verdict.  The Court awards judgment for the Defendant.  *See Intercontinental*, 295 S.W.3d at 654 ("[T]o qualify as a prevailing party, a . . . plaintiff must obtain at least some relief . . . a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties") (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 S. Ct. 566, 121 L. Ed. 2d 494

---

[4] "The issue of whether a breaching-but-nonpaying defendant can be a 'prevailing party' under an attorney's-fees provision like this is interesting legally, but not before us procedurally." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 659 (Tex. 2009).  The Court distinguishes from the Texas Supreme Court's holding in *Intercontinental* here because the parties actually litigated the issue of attorney's fees at trial and Smit is not a breaching-but-nonpaying party.  The Court has found that Smit did not breach any covenants or commit any tort in this case; therefore, he cannot be a "breaching-but-nonpaying" defendant as in *Intercontinental*.  Thus, attorney's fees are proper.  Had this Court found Smit in breach, the results could differ.  *See Intercontinental*, 295 S.W.3d at 655 ("Whether a party prevails turns on whether the party prevails upon the court to *award it something*, either monetary *or equitable*") (emphasis added).

(1992).[5] The Court previously found on oral motion no prevailing party exists. However, after further review, the Court reverses its previous ruling and holds Smit is the prevailing party in this action.

The Court hereby awards attorney's fees for Defendant. Plaintiff may file further objections to the attorney fee request within 10 days from the date of entry if Plaintiff wishes.

## CONCLUSION

Bumper Man failed to present sufficient evidence on any of its claims. In accordance with the above findings of fact and conclusions of law the Court finds that an injunction and damages are improper. The case having been tried and the issues duly decided, Bumper Man shall take nothing by way of his cause of action against Roy Smit, and Smit shall take nothing by way of his cause of action against Bumper Man.

**SO ORDERED**, this ___/2___ day of September, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[5] Analogous to *Farrar*, who was awarded one dollar in damages, Smit is the prevailing party through: successfully defending against all claims by Bumper Man, this Court granting his directed verdict, and the Court rendering a take-nothing judgment against Bumper Man.